UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 22-cr-00466-JST-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |
| AZAM DOOST, | Re: ECF Nos. 3, 9 |
| Defendant. | |

Petitioner Azam Doost, also known as Adam Doost, Mohammad Azam Doost and Mohammad Azim ("Doost"), filed a pro se federal habeas petition under 28 U.S.C. § 2241 to apply time credits earned under the First Step Act ("FSA") to reduce his term of supervised release, or in the alternative to terminate his supervised release. ECF Nos. 3, 9. The Court will deny the motion.

I.  **BACKGROUND**

   A.  **The First Step Act**

The First Step Act ("FSA") allows eligible prisoners to earn sentence credits towards time in pre-release custody or early transfer to supervised release for successfully completing recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). Eligible prisoners[1] who successfully complete evidence-based recidivism reduction programming or productive activities earn ten days of time credit for every 30 days of successful participation, and prisoners who are classified by the Bureau of Prisons ("BOP") to be at minimum or low risk for recidivating earn an additional five days. 18 U.S.C. § 3632(d)(4)(A). Time credit earned is

---

[1] Only inmates not convicted of a disqualifying offense are eligible for FSA earned time credits. 18 U.S.C. § 3632(d)(4)(D).

"applied toward time in prerelease custody or supervised release" at the discretion of the Director of BOP. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g). Pre-release custody consists of either home confinement or a residential reentry center ("RRC"). 18 U.S.C. § 3624(g)(2). Of the time credit earned, only 12 months may be applied to beginning a term of supervised release at an earlier date. 18 U.S.C. § 3624(g)(3). Time credits earned beyond 12 months may be applied by the BOP to a prisoner's eligibility date for pre-release custody, such as release to an RRC or home confinement. 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g)(2). The FSA's goals include reducing the risk of recidivism and saving incarceration-related costs. 18 U.S.C. § 3634(3), (6)–(7).

### B. Doost's Sentence, Credits Earned, and Petition

In 2017, Doost was charged in a 23-count indictment in the District of Columbia alleging major fraud against the United States (Counts One through Three); wire fraud (Counts Four through Eleven); false statements on loan application or extension (Counts 12 through 15); and money laundering (Counts 16 through 23). ECF No. 13-4 at 2–17. After a jury trial in 2018, Doost was found guilty on Counts One through 20 of the indictment. *Id.* at 18. Judge Amit Mehta sentenced Doost to 54 months in prison followed by three years of supervised release. *Id.* at 20–21. Doost was also ordered to complete 250 hours of community service, pay a lump sum of $2,000 in assessments, and pay restitution in the amount of $8,940,742.00. *Id.* at 23–25.

Doost began serving his prison term on November 5, 2019, with a projected statutory release date to supervised release of August 31, 2023. ECF No. 12-2 at 1–2. The BOP found that Doost was eligible for recidivism reduction programming under the FSA, ECF No. 9-1 at 6, and he began participating in programming and earning FSA time credit. On January 20, 2022, the BOP updated Doost's sentence computation to reflect that 330 days of FSA time credits were being applied toward early release to supervision. *Id.* at 4. Accordingly, his projected release date was adjusted to October 5, 2022. *Id.*

On March 1, 2022, Doost transferred to an RRC. ECF No. 13-2. On October 5, 2022, Doost began his three-year term of supervision. ECF No. 9-1 ¶ 2. Doost argues that he continued to earn time credits under the FSA for participating in recidivism reduction programming between

1  January 20, 2022 (the date BOP updated his sentence computation), and October 5, 2022 (the date

2  Doost began his term of supervised release).  ECF No. 1 at 2; ECF No. 9 at 3.[2]

3  The case was transferred to this Court in December 2022 and docketed on February 3,

4  2023.  ECF Nos. 1, 2.  Doost completed his 250 hours of community service in October 2023.

5  ECF No. 9-1 ¶ 2.  He completed 18 months of supervised release on April 5, 2024.

6  On February 5, 2024, Doost filed a pro se petition for writ of habeas corpus asking the

7  Court "to apply First Step Act (FSA) Earned Time Credit (EOT) accrued towards the remaining

8  term of his Supervised Release."  ECF No. 3 at 1.  Once Doost became represented by the federal

9  public defender, he filed a supplemental memorandum in support of his original motion which

10 corrected the number of earned time credits,[3] and argued in the alternative that the Court should

11 exercise its discretion under Section 3583 to terminate Doost's supervised release.  ECF No. 9; *see*

12 *also* 18 U.S.C. § 3583.  The Government filed an opposition, ECF No. 13, and Doost filed a reply,

13 ECF No. 16.  The Court heard argument on May 3, 2024.

14 **II.     DISCUSSION**

15 This motion presents three questions for resolution:

16 1.     Is Doost's petition moot given that he is no longer in BOP custody, as the

17 Government contends?

18 2.     Can the Court apply Doost's earned but unused FSA time credits to reduce his term

19 of supervised release?

---

[2] The federal public defender's supplemental memorandum notes that for the time credit earned between January 20, 2022, and October 5, 2022, "there were no FSA worksheets in Mr. Doost's file . . . because he was released before they started doing those worksheets."  ECF No. 9 at 3.  Although the statement cites to the public defender's declaration, the declaration contains no such statement.

[3] Doost claims that he earned 128 days of time credit under the FSA.  ECF No. 3 at 4.  The federal public defender calculates Doost's earned time credit to be 120 days as follows: Doost earned 15 days of credits for every 30 days of programming, because he was in a low-risk category.  ECF No. 9 at 3–4.  He earned credits for 8 FSA cycles between January 20, 2022, to October 4, 2022.  *Id.*  He did not earn any credit September 17, 2022, to October 4, 2022, because it was not a complete thirty-day cycle.  *Id.*  The Government does not dispute this calculation.  Because the Court ultimately denies the application of earned but unused time credits to reduce the term of supervised release, the Court does not decide the correct number of days for earned time credit under the FSA.

3

1      3.      If not, has Doost met his burden to show that this Court should terminate his supervised release?

The Court addresses these questions in turn.

## A. Mootness

The Government argues that Doost's request to apply earned but unused time credit to his term of supervised release under the FSA should be denied as moot because he is no longer in BOP custody. ECF No. 13 at 8–9. Doost responds that he is seeking relief from the Court, not from the BOP. ECF No. 16 at 2.

A habeas petition is moot where the petitioner "seeks relief [that] cannot be redressed by a favorable decision of the court issuing a writ of habeas corpus." *Burnett v. Lampert*, 432 F.3d 996, 1000–01 (9th Cir. 2005). However, the Ninth Circuit has found that a habeas petition that seeks to reduce a term of supervised release is not moot. *Serrato v. Clark*, 486 F.3d 560, 565 (9th Cir. 2007) (finding the petition not moot where a petitioner sought a reduction in his term of supervised release); *see also States v. Verdin*, 243 F.3d 1174, 1178–79 (9th Cir. 2001) (finding the petition not moot because although the petitioner had been released from custody, the district court could reduce the length of supervised release from three years to two.).

Doost is no longer in BOP custody and BOP has no authority over Doost's term of supervised release. Thus, to the extent that Doost claims that the BOP failed to apply four months of earned time credits which would have entitled him to earlier release to supervised release, the relief sought is moot. *Sila v. Warden*, 22-cv-1632-RSW-LAS, 2023 WL 2504476, at *2 (C.D. Cal. Feb. 13, 2023), *report and recommendation adopted*, No. 22-cv-1632-RSW-LAS, 2023 WL 2504989 (C.D. Cal. Mar. 13, 2023).

But that is not Doost's claim—he is not asking the BOP (or the Court) to reduce his time in custody, he's asking the Court to reduce his term of supervised release. This Court has the authority to amend Doost's terms of supervised release. 18 U.S.C. § 3583(e). "Because 18 U.S.C. § 3583(e)(2) gives the sentencing court the power to reduce a term of supervised release . . . [Doost's petition] is not moot." *Serrato*, 486 F.3d at 565.

4

**B.  Application of First Step Act Credits**

Doost argues that the Court should apply his earned but unused time credits to reduce his term of supervised release under the FSA. ECF No. 3 at 4. The Government responds that the Court lacks any "mechanism to reduce the defendant's term of imprisonment" and that FSA credits may not be used for that purpose. ECF No. 13 at 8–9.

The parties' dispute centers on the text of Section 3632(d)(4)(C) of the FSA:

> Time credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities ***shall be applied toward time in prerelease custody or supervised release***. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added).

To resolve this dispute, the Court uses traditional tools of statutory interpretation. "The first and most important canon of statutory construction is the presumption 'that a legislature says in a statute what it means and means in a statute what it says there.'" *In re Pangang Grp. Co., Ltd.*, 901 F.3d 1046, 1056 (9th Cir. 2018) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–254 (1992)). The Court "starts with the plain statutory text and, 'when deciding whether the language is plain, . . . must read the words in their context and with a view to their place in the overall statutory scheme.'" *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1075 (9th Cir. 2019) (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)). "In addition, [courts] examine the legislative history . . . and 'other traditional aids of statutory interpretation' in order to ascertain congressional intent." *Id.* (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13 (1981)).

**1.  Plain Text of Section 3632(d)(4)(C)**

The crux of this dispute is how this Court should interpret the word "toward" in Section 3632(d)(4)(C): "[t]ime credits earned . . . shall be applied *toward* time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

"When we interpret a word in a statute, we use the statute's definition of that word." *United States v. Migi*, 329 F.3d 1085, 1087 (9th Cir. 2003). Where Congress does not define the

5

terms used in the statute, courts interpret the words using their "ordinary, contemporary, and common meanings." *Id.* at 1088. The word "toward" can mean "on a course leading to," or bringing something closer—for instance in the phrase, "a long stride toward disarmament." *Toward*, Merriam-Webster Online Dictionary (2023) (last visited April 22, 2024). It can also mean "for the partial payment"—for instance in the phrase, "proceeds go toward the payment of a debt." *Id.* Applying these two common, alternative meanings of the word "toward" in the context of Section 3632(d)(4)(C) produces different outcomes regarding the application of earned time credit to reducing supervised release.

Some courts have agreed that the word "toward" in the FSA means to "bring [] something closer to happening." *United States v. Calabrese*, No. 1:11-cr-00437, 2023 WL 1969753, at *2 (N.D. Ohio Feb. 13, 2023). That is, that earned time credits bring an inmate closer to pre-release custody or to supervised release by reducing their time in prison. *Id.*; *see also Gonzalez v. Pierre-Mike*, No. 1:23-CV-11665-IT, 2023 WL 5984522, at *4 (D. Mass. Sept. 14, 2023), *appeal dismissed*, No. 23-1774, 2023 WL 10431080 (1st Cir. Dec. 6, 2023); *Dandridge v. United States*, 2023 WL 4137470, at *2 (E.D. Va. June 22, 2023).

Other courts have found that the word "toward" means to directly reduce the term of supervised release, in the same way that "toward" is used to pay down a debt in the sentence "proceeds go toward the payment of a debt." *Dyer v. Fulgam*, No. 1:21-CV-299-CLC-CHS, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022) ("the unambiguous, mandatory language of the statute provides that earned-time credits may be applied to a term of supervised release"), *appeal filed*, No. 22-5608 (6th Cir. July 19, 2022); *see also Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021) (reading Section 3632(d)(4)(C) to mean that earned time credits under the FSA can be applied toward time on supervised release.)

The Court finds that the plain meaning of "toward" is ambiguous in the statute and that both readings are plausible.[4] The Court therefore turns to other "canons of construction, legislative history, and the statute's overall purpose to illuminate Congress' intent" in enacting

---

[4] As Defendant notes in his reply memorandum, "Courts on both sides of the issue are equally secure that their reading is the obvious one." ECF No. 16 at 3.

6

1    Section 3632(d)(4)(C). *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009) (internal

2    quotations omitted).

### 2.  Overall Statutory Scheme and Structure

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1083 (9th Cir. 2019) (quoting *Davis v. Michigan Dep't. of Treasury*, 489 U.S. 803, 809 (1989)). The Court therefore considers other relevant statutory provisions of the FSA.

First, Section 3632(d)(4)(C) instructs the BOP to transfer eligible prisoners into prerelease custody or supervised release, citing Section 3624(g). Section 3624(g), in turn, defines an "eligible prisoner" as one who "has earned time credits under the [FSA] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). As the court in *Calabrese* noted, the clause "equal to the remainder of the prisoner's imposed term of imprisonment," suggests that time credits can only be used to reduce a prisoner's term of incarceration and not the term of supervised release. *Calabrese*, 2023 WL 1969753, at *3.

Second, Section 3624(g)(3) states "[i]f the sentencing court included . . . a term of supervised release . . . the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). Courts have read this section together with Section 3632(d)(4)(C) to mean that the BOP has the discretion to either transfer an inmate to pre-release custody or begin the inmate's term of supervised release, but BOP does not have any authority to reduce the actual term of supervised release. *Sila*, 2023 WL 2504476, at *2 (finding that "[t]he First Step Act . . . does not provide for a reduction of supervised release terms, and the BOP is not authorized to reduce such terms"). Doost argues that because an inmate can earn time credit while in residential reentry centers (i.e., halfway houses) or while on home confinement, "it stands to reason that [one] must be able to use those credits somewhere." ECF No. 16 at 3–4. Doost is not entirely wrong. Because inmates in home confinement or an RRC are in the custody of the BOP for the purposes of the FSA, the BOP has

7

1  the discretion to use the earned time credits to transfer an inmate from pre-release custody (such as
2  at an RRC) to supervised release. However, as discussed previously in this section, the BOP does
3  not have the authority to shorten a period of supervised release.
4       Third, no section in the FSA states that a Court may consider earned time credits to reduce
5  a term of supervised release. The FSA does not amend Section 3583 which governs the Court's
6  decision to modify a defendant's supervised release. 18 U.S.C. § 3583(e). Instead, Section
7  3624(e) suggests that the term of supervised release will remain the initial term that the sentencing
8  court imposed:

> A prisoner whose sentence includes a term of supervised release
> after imprisonment shall be released by the Bureau of Prisons to the
> supervision of a probation officer who shall, ***during the term
> imposed***, supervise the person released to the degree warranted by
> the conditions specified by the sentencing court.

18 U.S.C. § 3624(e) (emphasis added). As the *Calabrese* court notes, nothing in the language of Section 3624(e) suggests that the Court can apply earned but unused time credits to reduce a term of supervised release. *Calabrese*, 2023 WL 1969753, at *3.

     Reviewing Section 3632(d)(4)(C) in the context of other sections of the FSA, the Court finds that Congress did not intend the term "toward" to allow courts to apply earned but unused time credit to reduce a court-imposed term of supervised release. *Pac. Coast*, 945 F.3d at 1083.

### 3.    Legislative History

     Finally, the Court looks at the intent of Congress in enacting the FSA. *Ileto*, 565 F.3d at 1133. The question for this Court is whether Congress intended to allow earned time credits to reduce the term of supervised release. It did not.

     The intent of Congress can be inferred from statements in the congressional record regarding the FSA, which focus on the need to reduce unnecessary incarceration or to lessen the severity of confinement.

> It is important that we look at people who are at low risk of
> recidivism and low risk to public safety in the community because
> what we can do is use the resources not to keep people like that
> behind bars unnecessarily.

164 Cong. Rec. S7642 (daily ed. Dec. 17, 2018) (statement of Senator John Cornyn).

8

> This is because the incentives in this program are really important. I think we, as human beings, all operate based on incentives, and the incentive for prisoners is to go through the program, gain the earned credit so that they can be released—not to shorten their sentence but in less confining conditions, for example, a halfway house.

164 Cong. Rec. S7746 (daily ed. Dec. 18, 2018) (statement of Senator John Cornyn).

The legislative history of the FSA supports a narrow application of earned time credits to reduce a convicted felon's period of incarceration and to release them to pre-release custody or to supervised release, but not to reduce their supervised release term.

In sum, the Court agrees with the majority of district courts that have decided the issue and finds no mechanism in the FSA through which it can grant Doost the relief he seeks. *See Ector v. Engleman,* No. CV 22-6044-FLA (JPR), 2023 WL 6969784 (C.D. Cal. July 28, 2023), *report and recommendation adopted*, No. 22-cv-06044-FLA-JPR, 2023 WL 6130511 (C.D. Cal. Sept. 18, 2023); *Gonzalez*, 2023 WL 5984522; *Dandridge*, 2023 WL 4137470; *Calabrese*, 2023 WL 1969753.

### C. Early Termination of Supervised Release

In the alternative, Doost requests his term of supervised release be reduced under 18 U.S.C. § 3583(e). Doost seeks early termination because he "has maintained steady employment, complied with conditions, and participated in counseling and support programs." ECF No. 9 at 6. Under Section 3583(e), a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In making that determination, the statute directs the court to "consider[] the factors set forth in sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e). Those factors include "the nature and circumstances of the offense," to provide "adequate deterrence to criminal conduct," to "protect the public from further crimes of the defendant," and the need to "provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

"In evaluating 'the need to afford adequate deterrence and protect the public,' 18 U.S.C. § 3553(a)(2)(B), the Court considers the Judicial Conference of the United States's Framework for

9

Effective Supervision, which provides guidance to probation officers on the propriety of early termination based on how long a defendant has been under supervision." *United States v. Davis*, No. 2:22-CR-00077-TL, 2024 WL 553956, at *3 (W.D. Wash. Feb. 12, 2024) (citing *Guide to Judiciary Policy*, Vol. 8, Part E § 360.20).[5] Under that framework, once a defendant has completed 18 months of supervision, there is a presumption in favor of recommending early termination if the following criteria are met:

> (1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;
>
> (2) The person presents no identified risk of harm to the public or victims;
>
> (3) The person is free from any court-reported violations over a 12-month period;
>
> (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
>
> (5) The person is in substantial compliance with all conditions of supervision; and
>
> (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

*Id.*

The burden falls on the defendant to justify the early termination of supervised release. *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006). Neither unusual hardship nor exceptionally good behavior are required for early termination. *United States v. Ponce*, 22 F.4th 1045, 1047–48 (9th Cir. 2022). "[T]he language of § 3583(e) gives district courts broad discretion in determining whether to grant a motion to terminate supervised release." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (citing 18 U.S.C. § 3583(e)(1); *United States v. Hook*, 471 F.3d 766, 771 (7th Cir. 2006)).

The Court now considers the Section 3553 factors relevant to Doost's motion.

---

[5] "While the policy conclusions of the Judicial Conference may not be binding on the lower courts, they are 'at the very least entitled to respectful consideration.'" *Hollingsworth v. Perry*, 558 U.S. 183, 193–94 (2010) (citing *In re Sony BMG Music Ent.*, 564 F.3d 1, 6 (1st Cir. 2009)).

#### 1.     Nature of the Crime

The first factor the Court evaluates is the nature of the crime. 18 U.S.C. § 3553(a)(1). Doost engaged in a fraudulent scheme against the Overseas Private Investment Corporation ("OPIC"), a federal government agency, from November 2009 to July 2014 by failing to disclose affiliate transactions and submitting false invoices for equipment purchases in connection with a large loan he obtained from the Government. *United States v. Doost*, No. 1:17-CR-00109-APM-1, 2019 WL 1560114, at *2 (D.D.C. Apr. 10, 2019). The scope of the crime was enormous, and the loss to the Government was almost $9 million. ECF No. 13-4 at 24. Also reflecting the severity of this crime—although the Sentencing Guidelines range is in no way a perfect indicator of the seriousness of an offense—it bears mention that the Guidelines range for Doost's crimes was 135 months to 168 months in custody. ECF No. 10-1 at 26.[6] The Court finds that the severity of the offense weighs in favor of continued supervised release. *See United States v. Hunt*, No. 22-CR-00128-JST-1, 2022 WL 19975390, at *2 (N.D. Cal. Dec. 20, 2022) (denying motion for termination of supervised release in part because of severity of defendant's criminal conduct).

#### 2.     General and Specific Deterrence

The second factor the Court evaluates is whether continued supervised release would afford deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). Courts in the Ninth Circuit have recognized that general deterrence is "particularly important" in white-collar crimes. *United States v. Slavin,* No. 2:17-CR-00115-TLN, 2021 WL 1600293, at *6 (E.D. Cal. Apr. 23, 2021), *aff'd*, No. 21-10123, 2022 WL 576016 (9th Cir. Feb. 25, 2022). While one might reasonably question whether supervised release accomplishes general deterrence in the mill run of cases, terminating supervised release for a white-collar defendant who still owes almost $9 million in restitution would send the wrong message about the need to make victims whole. The Court therefore weighs this factor against early termination. For the same reason, the Court finds that specific deterrence counsels against early termination. *See* Roisin Duffy-Gideon, *Pay It Backward: Buy-Money Repayment As A Condition of Supervised Release*, 84 U. Chi. L. Rev.

---

[6] Sentences for three of the counts were statutorily capped at 120 months.

11

1933, 1966 (2017) ("Specifically, restitution may help the defendant better understand the harm she has caused her victim—a mechanism that may further both rehabilitation and specific deterrence.").[7]

### 3. The Need To Protect the Public From Further Crimes of the Defendant

Third, the court weighs § 3553(a)(2)(C), the need to protect the public from further crimes of the defendant.

The Government urges the Court to consider Doost's lack of remorse as evidenced through his many motions (for appeal, a new trial, and compassionate release). ECF No. 13 at 11–13. The Government argues that based on "Doost's persistent efforts to evade accountability and his ongoing attempts to reduce his sentence," "a reduction in his term of supervised release may not effectively deter him from engaging in similar fraudulent behavior in the future." *Id.* at 13. Doost responds that he had a constitutional right to avail himself of every right within the criminal justice system. ECF No. 16 at 5. The Court agrees with Doost: a court cannot weigh a "defendant's exercise of constitutional or statutory rights, including the right to appeal," against the defendant when determining an appropriate sentence. *United States v. LaPierre*, 998 F.2d 1460, 1467 (9th Cir. 1993) (internal citations and quotation marks omitted). Accordingly, the Court will not consider Doost's previous motions in determining whether to reduce his supervised release.

### 4. Lack of Acceptance of Responsibility

The Court also considers acceptance of responsibility. The Government alleges, and Doost does not dispute, that there is no evidence that Doost ever accepted responsibility for his crime. Doost argues that it would be unfair to consider his lack of acceptance of responsibility because doing so puts a defendant to an unfair choice—in contesting his conviction on appeal, for example, where acknowledgement of guilt might undermine his appellate arguments. This case, however, does not present those considerations. Defendant concluded post-conviction

---

[7] "In terms of specific deterrence, a study conducted by Professors Maureen Outlaw and R. Barry Ruback found that restitution payments may actually be linked to lower rates of re-arrest." *See* Duffy-Gideon, 84 U. Chi. L. Rev. 1933, 1967 (citing Maureen C. Outlaw and R. Barry Ruback, *Predictors and Outcomes of Victim Restitution Orders*, 16 Just Q 847, 849–50 (1999)).

proceedings long ago and could suffer no ill consequence were he to acknowledge responsibility for his crimes. Nonetheless, he has never done so.

No party cites, and the Court has been unable to find, any case within the Ninth Circuit addressing this question, but numerous district courts in other circuits have considered failure to accept responsibility in determining whether to grant early termination of supervised release. *See, e.g., United States v. Cohen*, No. 18-CR-602 (JMF), 2024 WL 1193604, at *4 (S.D.N.Y. Mar. 20, 2024) ("At a minimum, Cohen's ongoing and escalating efforts to walk away from his prior acceptance of responsibility for his crimes are manifest evidence of the ongoing need for specific deterrence."); *United States v. Donahue*, No. 3:08-CR-221, 2023 WL 5651991, at *4 (M.D. Pa. Aug. 31, 2023) (noting that "[i]n his present motion and reply brief, Donahue sets forth no acknowledgment of his wrongdoing or acceptance of responsibility"); *United States v. Kilpatrick*, No. 10-20403, 2023 WL 1487337, at *2 (E.D. Mich. Feb. 2, 2023) (finding that defendant's statements "do not show an acceptance of responsibility" and "weigh against early termination of supervised release"); *United States v. Scheckel*, No. 91-20049-09-JWL, 1998 WL 260283, at *1 (D. Kan. Apr. 9, 1998) ("Mr. Scheckel showed no acceptance of responsibility for his criminal conduct at the time of the trial nor the sentencing and has given this court no indication of acceptance of responsibility since sentencing."). As these courts have done, this Court finds that Doost's continued lack of acceptance of responsibility shows a continuing need for specific deterrence and weighs against early termination.

### 5. Need to Provide Restitution

Finally, the Court must consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Doost has been paying $100 per month on a restitution obligation of $8,940,742. Doost acknowledges that he will unlikely be able to pay off his restitution in the remaining 17-months of supervision, but that his "consistent payments are particularly commendable." ECF No. 16 at 7.

While Doost's consistent payments are laudable, the courts in this circuit have denied early termination of supervised release where there is a "need for continued payment of restitution" but the defendant's monthly payments do not come close to satisfying the total amount owed. *See*

13

*United States v. Sine*, No. 02-cr-0079-KJM-2, 2012 WL 1901298, at *2 (E.D. Cal. May 24, 2012) (denying early termination of supervised release where defendant owed $2,294,000 although defendant was making $400 monthly payments); *United States v. Morris*, No. CR-20-50242-PHX-SPL, 2022 WL 4124946, at *1 (D. Ariz. Aug. 19, 2022), *reconsideration denied*, No. CR-20-50242-PHX-SPL, 2022 WL 4121402 (D. Ariz. Sept. 9, 2022) (denying termination of supervised release where defendant owed more than $1.3 million in restitution.); *United States v. Clough*, No. 1:20-CR-105-BLW, 2022 WL 6731362, at *1 (D. Idaho Oct. 11, 2022) (denying early termination of supervised release because of the significant amount of restitution outstanding ($762,621.88.))[8] The Court finds that this consideration weighs against early termination of supervised release.

Considering the Section 3553 factors in totality, the Court is not persuaded that early termination of supervision is appropriate. The Court therefore denies Doost's motion for termination of his supervised release.

## CONCLUSION

For the foregoing reasons, Doost's motion to apply FSA credits to reduce his term of supervised release, or in the alternative to terminate his supervised release, is denied.

**IT IS SO ORDERED.**

Dated: May 7, 2024

_____
JON S. TIGAR
United States District Judge

---

[8] Doost cites to this Court's decision to grant early termination in *United States v. Broussard*, despite the defendant's unpaid restitution. ECF No. 16 at 7 (citing 21-cr-00367-JST, ECF No. 12.). The restitution amount in that case was 1.1% of the amount at issue here.

14